# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| INNOVA SOLUTIONS, INC., <br> Plaintiff, <br> v. <br> KATHY A. BARAN, <br> Defendant. | Case No. 17-cv-03674-VKD <br><br> **ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 43, 44 |

The Immigration and Nationality Act ("INA") permits non-citizens to work in the United States on a temporary basis, if they are sponsored by an employer in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). Plaintiff Innova Solutions, LLC ("Innova") filed a Petition for a Nonimmigrant Worker ("Petition") on behalf of its intended beneficiary, Rajesh Gogumalla, whom Innova planned to hire for a Technical Recruiter position.[1] The Petition was denied by the United States Citizenship and Immigration Services ("USCIS") on the ground that Innova failed to establish that the Technical Recruiter position was a "specialty occupation" under the INA and related regulations. Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702 and 706, Innova now seeks judicial review of that decision, contending that USCIS[2] acted arbitrarily

---

[1] Mr. Gogumalla is one of three beneficiaries at issue in this action. Pursuant to the Court's Case Management Order (Dkt. No. 42), the parties proceed first with Innova's claims regarding Mr. Gogumalla. Innova's claims as to the other two beneficiaries, Ms. Karunamayi and Mr. Dodda, have been held in abeyance pending resolution of the present motions.

[2] Innova named defendant Kathy Baran ("Director"), in her official capacity as the Director of the USCIS California Service Center with jurisdiction over the Petition that is the basis of the parties' cross-motions.

and capriciously and abused its discretion.

The matter is now before the Court on the parties' cross-motions for summary judgment. The Court held a hearing on August 28, 2018. Having considered the parties' respective moving and responding papers, the presentations of counsel at the hearing, and the record in this case, the Court denies Innova's motion for summary judgment and grants the Director's motion for summary judgment.[3]

## I. BACKGROUND

Innova is a for-profit company based in Santa Clara, California that provides information technology services to businesses in a variety of industries. At the time it submitted the Petition in question, Innova had 50 employees and gross annual revenues of about $19 million. AR[4] 24.

Innova offered Mr. Gogumalla a position as a Technical Recruiter. On April 11, 2016, Innova submitted the Petition, requesting an H-1B visa for Mr. Gogumalla as a nonimmigrant working in a "specialty occupation" pursuant to INA, 8 U.S.C. § 1101(a)(15)(H)(i)(b). *Id.* at 19-97. According to Innova's Petition, Mr. Gogumalla earned a bachelor's degree in computer applications from Osmana University in India and also holds the U.S. academic equivalent of a master's degree in business administration. *Id.* at 36, 83-88. Among the papers Innova submitted in support of its Petition was a letter from its Senior Vice President of Human Resources and Operations identifying Mr. Gogumalla's duties and responsibilities as Technical Recruiter.[5] *Id.* at 35-37.

On October 5, 2016, USCIS issued a Request for Evidence, seeking additional information, including evidence establishing that the Technical Recruiter position is a "specialty occupation." AR 98-106. Among other things, Innova was asked to provide a more detailed

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[4] "AR" refers to the certified administrative record submitted in this matter. Dkt. No. 50.

[5] Innova also submitted a copy of the Certified Labor Condition Application; company information, including Innova's Articles of Incorporation, business license, rental lease and an overview of its service offerings; and Mr. Gogumalla's resume, degrees, transcripts, letters regarding his experience, and passport. AR 33-97.

2

description of the work to be performed, the percentage of time to be spent on each duty, the level of responsibility required, the hours of work per week, as well as the minimum education, training and experience necessary to do the job. *Id*. at 99-106.

Innova responded on December 27, 2016, and included in its response the following additional information about the Technical Recruiter's job duties, assessing that 55% of Mr. Gogumalla's time would be spent on tasks Innova believed required a bachelor's degree:[6]

| Duties | Level of Difficulty | Percentage of Time Spent |
|---|---|---|
| 1. Identifying and providing resources for various positions (contracting/consulting and full time) as needed by the Sales Team and Hiring Managers and managing full-cycle recruiting efforts right from recruitment gathering through offer, negotiation and closure | 4 | 30% |
| 2. Supporting the Sales Team/Technical Managers in terms of resource and account management, developing new ideas to create sourcing strategies and exploring alternative avenues for recruiting (referrals, job fairs, campus, etc.), Mentoring/Guiding junior recruiters and developing Job Description and posting/publishing them on various job boards and online forums | 3 | 10% |
| 3. Responsible for pre-screening the candidates and forwarding the qualified resumes to Account Manager/Technical Team/Hiring Manager | 4 | 15% |
| 4. Developing, maintaining, and strengthening vendor base and candidate resource pool in various technical areas | 4 | 5% |
| 5. Handling Vendor MSA sign-up process; negotiating the contract terms and hourly rates | 3 | 10% |

---

[6] Innova rated the difficulty of each job duty on a scale of 1 to 5 as follows: "1 Novice"; "2 Some Exposure"; "3 Familiarity with Computers"; "4 Bachelor's"; and "5 Master's." AR 128.

3

| Duties | Level of Difficulty | Percentage of Time Spent |
| --- | --- | --- |
| 6. Preparing/Approving vendor SOW for new closures, updating SOWs for project renewals, updating Vendor Cost Sheet, scheduling initial technical screening, comprehensive in-person technical interviews and follow up procedures | 2 | 10% |
| 7. Initiating the process of Background and Reference Checks upon offer acceptance/closure, communicating the new contractors/new hire information to Account Dept. and Operations Team | 2 | 5% |
| 8. For full time hires, coordinate within the company to ensure smooth induction and orientation | 3 | 5% |
| 9. Keeping abreast with company hiring and immigration policies and relevant laws and regulations | 4 | 5% |
| 10. Ensuring compliance with EEOC and ADA guidelines, create, maintain, and update key recruiting statistics—Daily/Weekly/Monthly status reports | 3 | 5% |

AR 127-28.

On February 9, 2017, USCIS denied the Petition, concluding that Innova failed to establish that the Technical Recruiter position is a "specialty occupation." AR 2-9. Innova contends that the USCIS failed to properly consider the evidence and did not articulate any reasonable basis for its decision, and that the agency's decision therefore must be set aside as arbitrary, capricious, and an abuse of discretion.

**II.  LEGAL STANDARD**

The APA allows for judicial review of an agency action and provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .." 5 U.S.C. § 706(2)(A). While the reviewing court "must conduct a searching and careful inquiry

into the facts," the standard of review "is a narrow one," and "a court is not empowered by section 706(2)(A) to substitute its judgment for that of the agency." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citing *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983)).

In reviewing an agency's decision, a court considers whether there was a clear error of judgment and whether the decision was based on relevant factors. *Nw. Motorcycle Ass'n*, 18 F.3d at 1471. "In order for an agency decision to be upheld under the arbitrary and capricious standard, a court must find that evidence before the agency provided a rational and ample basis for its decision." *Id*. All that is required is a rational connection between the facts found and the conclusions made by the agency. *Friends of Santa Clara River v. U.S. Army Corps of Engineers*, 887 F.3d 906, 920 (9th Cir. 2018). Accordingly, an agency's decision will not be vacated unless the agency relied on factors Congress did not intend for the agency to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that is counter to the evidence presented, or provided an explanation that is so implausible that it cannot be ascribed to a difference in viewpoints or as the product of the agency's expertise. *Id*. at 921.

Although courts routinely resolve APA challenges to an agency's administrative decision by summary judgment, courts do not follow the traditional analysis to determine whether a genuine issue of material fact exists, because "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*. The court's review is limited to the administrative record, to which both sides have stipulated. *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

### III. DISCUSSION

The sole issue presented is whether USCIS erred in concluding that Innova's Technical Recruiter position is not a "specialty occupation." A "specialty occupation" is "an occupation that requires theoretical and practical application of a body of highly specialized knowledge, and attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a

minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1)(A), (B). The related regulation provides:

> Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii).

Innova can establish that Mr. Gogumalla would perform a "specialty occupation" by showing that the Technical Recruiter position meets one of the following four criteria:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or
>
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). Innova bears the burden of proving that the Technical Recruiter position meets one of these criteria. 8 U.S.C. § 1361.

In its motion for summary judgment, Innova contends that it met the requirements of the first, second and fourth criteria. In her cross-motion, the Director argues that Innova failed to satisfy any of the four criteria.

**A.  Criterion 1: A Baccalaureate or Higher Degree or its Equivalent**

"Fundamentally, an H-1B visa allows an employer to reach outside of the U.S. to fill a temporary position because of a special need, presumably one that cannot be easily fulfilled within the U.S." *Caremax, Inc. v. Holder*, 40 F. Supp. 3d 1182, 1187 (N.D. Cal. 2014). The parties do not dispute that a general-purpose bachelor's degree, such as a business degree, is insufficient to

meet this first criterion. All agree that to qualify as a "specialty occupation," a position must require "a bachelor's or higher degree *in the specific specialty (or its equivalent)* as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1)(B) (emphasis added). "While 8 C.F.R. § 214.2(h)(4) (iii)(A)(1) does not use the language of 'specific specialty,' USCIS does not abuse its discretion in reading this regulation together with 8 C.F.R. § 214(h)(4)(ii), which defines a 'specialty occupation' as one that 'requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent.'" *Chung Song Ja Corp. v. U.S. Citizenship & Immigration Servs.*, 96 F. Supp. 3d 1191, 1197 (W.D. Wash. 2015) (citing *In re Petitioner [Identifying information redacted by Agency]*, 2013 WL 8124091, **8–11 (OAH, Dec. 24, 2013)). "This latter definition is identical to that provided by the INA itself." *Id*. (citing 8 U.S.C. § 1184(i)(1). Indeed, "[a] position that requires applicants to have any bachelor's degree, or a bachelor's degree in a large subset of fields, can hardly be considered specialized." *Caremax, Inc.*, 40 F. Supp. 3d at 1187-88.

However, the parties disagree whether, in concluding that the Technical Recruiter position is not a "specialty occupation," USCIS misconstrued the Department of Labor's Occupational Outlook Handbook ("OOH") profile for "Human Resources Specialists"—the reference position for purposes of Innova's Petition. Both Innova and USCIS relied on the 2016-17 edition of the OOH profile for Human Resource Specialists to determine if a specific bachelor's degree is a minimum requirement for entry into the profession. AR 5, 283-296.[7] Relevant to the discussion here, that profile provides:

> Human resources specialists must usually have a bachelor's degree.
>
> **Education**
>
> Applicants seeking positions as a human resources specialist must usually have a bachelor's degree in human resources, business, or a related field.

---

[7] Although Innova contends that the OOH was invoked solely by USCIS (AR 104), the administrative record shows that Innova submitted the OOH's profile for Human Resource Specialists in support of its response to USCIS's Request for Evidence. AR 282-296. At the hearing, both parties agreed that, with respect to the first regulatory criterion, the USCIS looks to the OOH as the authoritative source in determining whether a position is a "specialty occupation."

> Coursework typically includes business, industrial relations, psychology, writing, human resource management, and accounting.

AR 5, 286. Based on the OOH profile, USCIS concluded:

> As shown in the OOH, although a baccalaureate level of training is preferred, the position of Human Resources Specialist[] is an occupation that does not require a baccalaureate level of education in a specific specialty as a normal, minimum for entry into the occupation. There is no clear standard for how one prepares for a career as a Human Resources Specialists and no requirement for a degree in a specific specialty.
>
> The requirements appear to vary by employer as to what course of study might be appropriate or preferred. As a result, the proffered position cannot be considered to have met this criterion.

AR 6. Innova argues that USCIS misconstrued the OOH profile as requiring a "business" degree as the sole educational prerequisite, while ignoring that the profile also refers to a bachelor's degree in "human resources" or a "related field." Citing *Tapis Int'l v. I.N.S.*, 94 F. Supp. 2d 172 (D. Mass. 2000) and *Residential Finance Corp. v. U.S. Citizenship & Immigration Servs.*, 839 F. Supp. 2d 985 (S.D. Ohio 2012), Innova contends that USCIS unreasonably focused on the title of a field of study (i.e., "business") and interpreted the OOH profile too narrowly as requiring a degree in the exact field of the occupation.

In *Tapis*, an interior design firm and its showroom manager challenged the INS's denial of a request to renew the manager's H-1B visa. Focusing on the design firm's assertion that the position required, "as a minimum, a bachelor's degree in marketing, business administration, or a related field, as well as additional training or experience in the field of interior design," the INS concluded that the interior showroom design manager position was not a "specialty occupation" because it did not require a degree in that specific specialty. 94 F. Supp. 2d at 175. On review of the INS's decision, the district court concluded that by ignoring statutory and regulatory guidelines allowing "for a bachelor's degree *or its equivalent*," the agency unreasonably "preclude[d] any position from satisfying the 'specialty occupation' requirements where a specific degree is not available in that field." *Id*. The district court found that the INS's interpretation of the relevant guidelines was unreasonable because it meant that the beneficiary in question "could not qualify unless he obtained a degree in interior design showroom management." *Id*. at 176.

8

Thus, the INS abused its discretion in "read[ing] the bachelor's requirement of 'specialty occupation' to include only those positions where a specific bachelor's degree is offered." *Id*.

In *Residential Finance*, the district court concluded that the USCIS acted arbitrarily and capriciously and abused its discretion in determining that the market research analyst position at issue was not a "specialty occupation." 839 F. Supp. 2d at 997. There, the beneficiary obtained a bachelor of science degree in marketing and finance, and the court found that "a minimum requirement for entry into the position of a market research analyst is the specialized course of study in which [the beneficiary] engaged." *Id*. at 996. Rejecting "[d]efendant's implicit premise that the title of a field of study controls," the court concluded that "[t]he knowledge and not the title of the degree is what is important." *Id*. at 996-97. "Diplomas rarely come bearing occupation-specific majors. What is required is an occupation that requires highly specialized knowledge and a prospective employee who has attained credentialing indicating possession of that knowledge." *Id*.

*Tapis* and *Residential Finance* teach that the first regulatory criterion does not limit qualifying occupations to those for which there exists a single, specifically tailored degree program, and that the title of the degree (e.g., "business") does not necessarily control. However, neither *Tapis* nor *Residential Finance* compels the conclusion that Innova's Technical Recruiter position is a "specialty occupation." Unlike *Tapis*, the record presented here does not indicate that USCIS construed the OOH Human Resources Specialists profile as being limited to a specific field in which no degree is available. Unlike *Residential Finance*, nothing in the record indicates that the Technical Recruiter position is a distinct occupation requiring a specialized course of study. Rather, USCIS concluded that the Technical Recruiter position is not a "specialty occupation" because the OOH indicates that a Human Resources Specialist position does not require a degree *only* in a specific specialty.

On this point, the Court finds *Irish Help at Home LLC v. Melville*, No. 13-cv-00943-MEJ, 2015 WL 848977 (N.D. Cal., Feb. 24, 2015), *aff'd* 679 Fed. App'x 634 (9th Cir. 2017), instructive. In *Irish Help*, Judge James upheld the denial of an H-1B visa application for a deputy controller position that USCIS concluded was not a "specialty occupation." In that case, the

9

beneficiary obtained a bachelor's degree in finance, and the pertinent OOH profile provided: "'A bachelor's degree in finance, accounting, economics, or business administration is often the minimum education needed for financial managers. However, many employers now seek candidates with a master's degree, preferably in business administration, finance or economics.'" *Id*. at *1, *5. USCIS concluded that the deputy controller position was not a "specialty occupation" because the OOH indicated that the minimum requirement for entry into the position could be satisfied by a general purpose degree, such as a degree in business administration. *Id*. at *5. Judge James agreed, finding that "there is no credible evidence supporting that Irish Help's deputy controller position is specialized in the sense that the [sic] it could *only* be performed by one with specialized knowledge in a specialized course of study, as opposed to one with a more generic degree." *Id*. at *7 (emphasis added); *see also Caremax, Inc.*, 40 F. Supp. 3d at 1187-88 ("A position that requires applicants to have any bachelor's degree, or a bachelor's degree in a large subset of fields, can hardly be considered specialized.").

Similarly, here the OOH profile indicates that a person need not have a specialized degree to be a Human Resources Specialist. Instead, a generalized bachelor's degree, such as a business degree, will suffice. While "a general-purpose bachelor's degree, such as a degree in business administration, may be a legitimate prerequisite for a particular position, requiring such a degree, without more, will not justify the granting of a petition for an H-1B specialty occupation visa." *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 147 (1st Cir. 2007) (citations omitted). Innova contends that the OOH profile actually requires something "more" than a business degree because it refers to coursework in a number of areas, including industrial relations, psychology, writing, human resources management, and accounting. AR 286. However, that portion of the profile appears to simply list underlying coursework typically offered by programs for obtaining a number of degrees, including a business degree, any one of which may adequately prepare a person to perform the required job duties. The Court finds that USCIS provided a rational and ample basis for its determination that the Technical Recruiter position does not meet this first regulatory criterion.

### B. Criterion 2: Bachelor's Degree Common to the Industry and the Complexity and Uniqueness of the Position

Under this criterion, there are two ways in which Innova can establish that the Technical Recruiter position is a "specialty occupation": (1) by showing that "[t]he degree requirement is common to the industry in parallel positions among similar organizations" or, alternatively (2) by demonstrating that the position "is so complex or unique that it can be performed only by an individual with a degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(2). As discussed above, and in view of the regulatory and statutory definitions of "specialty occupation," there is no dispute that a generic degree is insufficient to satisfy this second criterion, or any of the remaining criteria. Rather, a "specialty occupation" requires "a bachelor's degree or higher in a *specific specialty, or its equivalent . . . .*" 8 C.F.R. § 214.2(h)(4) (emphasis added); *see also* 8 U.S.C. § 1184(i)(1).

#### 1. Bachelor's Degree Common to the Industry

Here, "USCIS typically considers whether the [OOH] reports on an industry-wide requirement, whether a professional association has made a degree a minimum entry requirement, and whether firms or individuals in the industry have attested that such firms 'routinely employ and recruit only degreed individuals.'" *Irish Help at Home LLC*, 2015 WL 848977, at *7 (quoting *Shanti, Inc. v. Reno*, 36 F. Supp. 2d 1151, 1165 (D. Minn. 1999)). USCIS concluded that Innova failed to present sufficient documentation showing that the degree requirement for the Technical Recruiter position is common to the industry in parallel positions among similar organizations. AR 8. Innova contends that the agency failed to provide any meaningful discussion as to the reasons for its decision.[8]

Having reviewed the record, the Court finds that USCIS did not act arbitrarily or capriciously, nor did it abuse its discretion, in determining that Innova did not meet this first clause of the second regulatory criterion. As discussed above, USCIS concluded that, based on the OOH, the requirements for Human Resource Specialist position "appear to vary by employer

---

[8] Innova argues that portions of USCIS's decision concerning another one of the beneficiaries at issue in this action, Ms. Karunamayi, demonstrates that USCIS's decision denying Mr. Gogumalla's H-1B visa status is simply a boilerplate, canned response. However, in resolving the present matter, the Court considers only the evidence of record concerning Mr. Gogumalla.

11

as to what course of study might be appropriate or preferred." AR 6. Further, USCIS correctly noted that Innova "submitted no documentation that any industry-related professional association has made a bachelor's degree a requirement for entry into the field" and did "not submit[] letters or affidavits from firms or individuals in the information technology services industry which attest that such businesses routinely employ and recruit only degreed individuals." AR 7, 119. Moreover, USCIS considered Innova's submission of internet job postings for six other companies (AR 298-310):

- A posting by Huawei Technologies Co., Ltd. states that the company requires a bachelor's degree in "Human Resources or related field." AR 298.
- Another posting indicates that Raytheon requires a bachelor's degree in "Business Management, Communications, Finance, HR Psychology or related discipline . . .." AR 301.
- A USM posting says that the company requires a "Bachelor's Degree and Masters in Business Administration." AR 303.
- A Logicworks posting notes that a "BA/BS degree from an accredited college or university" is required. AR 304.
- A Vistex posting says only that a "Bachelor's degree [is] preferred." AR 307.
- Similarly, a posting for Brett, LLC says only that a "Bachelor's Degree [is] preferred." AR 308.

In assessing these postings, USCIS correctly observed:

> Although some of the announcements do specify an educational background, they do not limit the field of study to a particular field that is appropriate to the proffered position, but allow for a wide variety of backgrounds to include Human Resources, Business Management, Communications, Finance, HR Psychology or related discipline and Business Admission/Administration, while the remainder of the announcements do not specify an educational background. . . .
>
> Also, no other evidence was submitted that is sufficient to establish that the degree requirement is common to the industry in parallel positions among similar organizations. Accordingly, you have not met this criterion.

AR 7-8.

While the postings suggest that each of these companies may operate in the same general business arena as Innova (i.e., technology), there is nothing in the record showing that any of these six other employers are similar to Innova in any other way, such as size, scope, or scale of operations, expenditures, or revenues. Because Innova bears the burden of demonstrating that it meets the "specialty occupation" criteria, 8 U.S.C. § 1361, USCIS's observation that Innova failed to present such evidence is sufficient to establish that USCIS did not act arbitrarily or capriciously and did not abuse its discretion.

### 2. Complex and Unique Position

Under this clause of the second regulatory criterion, the Technical Recruiter position may qualify as a "specialty occupation" if Innova establishes that the position "is so complex or unique that it can be performed only by an individual with a degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(2). USCIS concluded that Innova failed to submit sufficient evidence showing that the Technical Recruiter position is more unique or complex than other similar positions in the same industry. AR 8. In particular, USCIS criticized the list of job duties Innova had submitted as "generic in nature" and insufficiently detailed. *Id.* Innova contends that the agency failed to give proper consideration to the documentation it submitted and to the nature of its business.

In support of its initial submission and in response to USCIS's Request for Evidence, Innova provided the following information:

- A more detailed description of the work to be performed by its Technical Recruiter, (reproduced above) (AR 127-28);

- An slide presentation overview of Innova's operations (AR 63-78);

- Innova's Employee Guide Manual, which Innova says Mr. Gogumalla would administer and would use to train other employees (AR 147-63);

- Innova's internal code of conduct, which Mr. Gogumalla would be responsible for enforcing (AR 164-72);

- An overview of Innova's Employee Benefits Package, which Mr. Gogumalla would be responsible for overseeing (AR 173-74);

13

- Sample Scope of Work documents and Master Service Agreements that Mr. Gogumalla would be responsible for preparing, approving, and negotiating (AR 333-45, 346-55, 356-71);

- Printouts from Innova's website and its press releases 316-32; and

- A template of Innova's performance review form, which Mr. Gogumalla would use in performance evaluations (AR 176-79).

However, Innova's discussion of this material was rather cursory. In its initial letter to the agency, Innova wrote:

> The position requires a theoretical and practical application of a body of highly specialized knowledge. The position realistically requires this type of advance knowledge and in-depth academic training that is available almost exclusively through university level education. A person without a university level education would not have the necessary knowledge to perform these sophisticated job duties. The minimum level of education required by our company and by general current industry standards to perform the above tasks with any degree of efficiency and cost effectiveness is a Bachelor's degree or foreign academic equivalent and preferably some relevant experience. These minimum prerequisites for the offered position clearly make it a specialty occupation.

AR 36. This explanation mainly tracks the language of the statute and the regulations. In response to USCIS's Request for Evidence, Innova argued:

> Please note that the proffered position is differentiated from other related "non-specialty occupation" positions in that this occupation involves consulting with employers to identify employment needs, recruiting, screening, interviewing and placing workers for and handling tasks related to employee relations, compensation and benefits, and training. These are duties which are not commonly achieved with anything less than a minimum of a Baccalaureate degree in a specific technical field of study. . . .
>
> Per your request, please also see *attached* documentation of the Petitioner's services and proprietary products and platforms, Website printouts and also customer contracts with companies such as Conde Nast, Rackspace, Hexaware, and Ambient, evidencing the service offerings Innova offers their Clients. In addition, please see Invoices, Website printouts, and Press Releases, to further evidence of [sic] what differentiates them as a provider of world class Services from others in the industry, and why it requires a baccalaureate level of study to perform the duties of the position. Please see Exhibit 13 (Supra)

AR 121.

Innova correctly observes that USCIS did not comment separately on each item of

documentation it submitted. However, Innova did not do so either in its submissions to USCIS. As discussed above, Innova bears the burden of proof, 8 U.S.C. § 1361, and "[c]ommensurate with that burden is responsibility for explaining the significance of proffered evidence." *Repaka v. Beers*, 993 F. Supp. 2d 1214, 1219 (S.D. Cal. 2014). Innova's explanation of the position and of the supporting documentation, both initially and in response to the Request for Evidence, discusses Innova's requirement of *a* bachelor's degree or foreign academic equivalent and provides high-level assertions that the position is distinct from non-specialty occupations. Although Innova provided documents describing its business and a chart identifying the duties and responsibilities of the Technical Recruiter position along with the percentage of time Mr. Gogumalla would be expected to devote to each, it did not explain or show how those specific duties and responsibilities, or the nature of Innova's business, makes the position so unique or complex that it can only be performed by a person with a degree in a specific specialty. The conclusion Innova asked USCIS to draw is not self-evident from the documents and description it submitted.

In its briefing before this Court, Innova includes the following argument:

> Mr. Gogumalla's recruitment duties include evaluating the qualifications of candidates performing in positions that are highly specialized and technical. As such, in the context of Plaintiff's business, the position of Human Resources Specialist requires specialized knowledge beyond a generalized degree.

Dkt. No. 43 at 17. Elsewhere in its briefing, Innova argues that it provided USCIS with "reasoned analysis" demonstrating that the Technical Recruiter position "requires specialized knowledge in EEOC and ADA guidelines, recruitment strategy, technology-based candidate screening, candidate pre-screening strategy, preparing and negotiating MSAs and SOWs, resource and account management, comprehensive technical interview techniques, and familiarity with employment laws and regulations in multiple jurisdictions." Dkt. No. 45 at 12. As discussed above, however, Innova provided the agency with little "reasoned analysis" aside from high-level, conclusory assertions. Even here, Innova does not articulate why these work descriptions make the Technical Recruiter position so complex or unique that it can be performed only by an individual with a degree in a specific specialty or its equivalent.

Innova argues that the Court should follow *Fred 26 Importers, Inc. v. U.S. Dep't of Homeland Security*, 445 F. Supp. 2d 1174 (C.D. Cal. 2006) and *Next Generation Tech., Inc. v. Johnson*, No. 15-cv-5663 (DF), 2017 WL 4685275 (S.D.N.Y., Sept. 29, 2017). In *Fred 26 Importers*, the employer submitted letters from two professors who opined that the human resources manager position at issue required knowledge and various skills acquired through a bachelor's degree in human resources or a related field. 445 F. Supp. 2d at 1180. However, the agency did not consider those letters at all. *Id*. The district court concluded that the agency abused its discretion because it did not address the professors' conclusions, did not discuss the specific job duties, and cited no evidence in support of its conclusion that the duties of the position were not specialized or complex. Instead, the agency merely recited the criterion and said that the employer did not meet the requirement. *Id.* at 1180-81.

In *Next Generation*, the beneficiary was a computer programmer hired to work on a particular project. In denying the employer's petition, USCIS determined that, because the evidence indicated that *some* employers hired programmers with an associate's degree or no degree, the programmer position did not *normally* require a bachelor's degree. The district court concluded that USCIS's denial of an H-1B visa was arbitrary and capricious because USCIS ignored evidence in the record that provided details about the project, including a description of the roles and responsibilities of each position needed for the project. Moreover, the court found that USCIS's reasoning that the position did not normally require a bachelor's degree could not be squared with evidence indicating that *most* computer programmers hold a bachelor's degree in computer science or a related subject. 2017 WL 4685275 at *9-11.

In both *Fred 26 Importers* and *Next Generation*, the court concluded that USCIS had ignored the employer's evidence altogether or provided reasons for its decision that were contrary to the evidence presented. Here, USCIS did not ignore evidence or provide reasons for its decision that are inconsistent with the evidence presented. Rather, USCIS concluded that there was *insufficient* evidence to support a finding that, due to the complexity or uniqueness of the Technical Recruiter position, the position did not qualify as a "specialty occupation." Having reviewed the record, the Court finds that USCIS did not act arbitrarily or capriciously, nor did it

abuse its discretion, in determining that Innova did not meet this second clause of the second regulatory criterion.

### C. Criterion 3: Position Normally Requires a Degree or its Equivalent[9]

The third way for Innova to demonstrate that the Technical Recruiter position is a "specialty occupation" is by showing that the company "normally requires a degree or its equivalent for the position." 8 C.F.R. § 214.2(h)(4)(iii)(A)(3). Here, with respect to its "Past Employment Practices" (AR 120), Innova provided a November 1, 2016 job posting for the Technical Recruiter position (AR 310); evidence that its only other Technical Recruiter, Deepa Krishna, holds a bachelor's degree in Human Resource Management (AR 312); and Ms. Krishna's payroll records for the period November 1, 2016 to November 15, 2016 (AR 313-14).

In assessing this evidence, USCIS concluded that Innova did not demonstrate that it had, "in the past, required the services of individuals with baccalaureate or higher degrees in a specific specialty for the offered position." AR 8. Here, the agency noted Innova's assertion that the company requires applicants to have "at least a Bachelor's Degree in Business Administration, Business Management, Human Resources, Marketing, or a related field." *Id*. As discussed above,"[a] position that requires applicants to have any bachelor's degree, or a bachelor's degree in a large subset of fields, can hardly be considered specialized." *Caremax, Inc.*, 40 F. Supp. 3d at 1187-88. Additionally, USCIS discounted the November 1, 2016 job posting because it was dated after the Petition for Mr. Gogumalla was filed. While the agency acknowledged that Innova demonstrated that one of its Technical Recruiters had a bachelor's degree, it also noted that her degree is not in the same field of study as Mr. Gogumalla.

Innova contends that USCIS's Request for Evidence said the company should submit "*present* and past job vacancy announcements . . . ." AR 105 (emphasis added). Innova says that the Petition should not have been denied simply because the company did what USCIS asked. Nevertheless, the Court concludes that USCIS articulated a rational and ample basis for its

---

[9] Innova did not address the third regulatory criterion in its affirmative motion for summary judgment. The Director, however, raised this criterion as part of her motion for summary judgment.

17

decision based on the record evidence in concluding that Innova did not meet this criterion. *See Caremax, Inc.*, 40 F. Supp. 3d at 1189 (concluding that USCIS did not abuse its discretion in finding that the plaintiff failed to satisfy this criterion where the company acknowledged that this was its first public relations specialist position, and where its prior public relations employee held a different degree than the beneficiary in question).

### D. Criterion 4: The Nature of the Specific Duties of the Position

The fourth regulatory criterion provides that the Technical Recruiter position may qualify as a "specialty occupation" if Innova demonstrates that "[t]he nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(4). In their respective briefing, the parties discuss this criterion together with the second clause of the second criterion. For the same reasons described above with respect the second criterion, the Court finds that Innova has not shown that USCIS's denial of its petition was arbitrary and capricious.

### CONCLUSION

Based on the foregoing, the Court denies Innova's motion for summary judgment and grants the Director's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: October 10, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge

18