United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

INNOVA SOLUTIONS, INC.,

Plaintiff,

v.

KATHY A. BARAN,

Defendant.

Case No. 17-cv-03674-VKD

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT RE DILIP DODDA**

Re: Dkt. Nos. 61, 62

The Immigration and Nationality Act ("INA") permits non-citizens to work in the United States on a temporary basis, if they are sponsored by an employer in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). Plaintiff Innova Solutions, LLC ("Innova") filed a Petition for a Nonimmigrant Worker ("Petition") on behalf of its intended beneficiary, Dilip Dodda, whom Innova planned to hire for a Programmer Analyst position.[1] The Petition was denied by the United States Citizenship and Immigration Services ("USCIS") on the ground that Innova failed to establish that the position was a "specialty occupation" under the INA and related regulations. Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 and § 706, Innova now seeks judicial review of that decision, contending that USCIS[2] acted arbitrarily and capriciously

[1] Mr. Dodda is one of three beneficiaries at issue in this action. Pursuant to the Court's Case Management Order (Dkt. No. 42), the parties proceeded first with Innova's claims regarding beneficiary Mr. Gogumalla, and the Court has adjudicated the parties' cross-motions for summary judgment with respect to him. Dkt. No. 56. Innova's claims as to the third beneficiary, Ms. Karunamayi, have been held in abeyance pending resolution of the present motions.

[2] Innova named defendant Kathy Baran ("Director"), in her official capacity as the Director of the USCIS California Service Center with jurisdiction over the Petition that is the basis of the parties' cross-motions.

and abused its discretion.

The matter is now before the Court on the parties' cross-motions for summary judgment.[3] Having considered the parties' respective moving and responding papers, the presentations of counsel at the January 8, 2019 hearing, and the record in this case, the Court denies Innova's motion for summary judgment and grants the Director's cross-motion for summary judgment.[4]

## I. BACKGROUND

Innova is a for-profit company based in Santa Clara, California that provides information technology services to businesses in a variety of industries. The company says that it focuses primarily on development and engineering services, cloud services, migration services, data management and mobility management. AR[5] 36.

Innova planned to employ Mr. Dodda as a Programmer Analyst from October 1, 2017 to August 17, 2020. *Id*. at 27. Mr. Dodda holds a bachelor's degree in Electrical & Electronics Engineering from Jawaharlal Nehru Technological University in India. *Id*. at 39, 79. At the time Innova offered him the Programmer Analyst position, Mr. Dodda had about a decade of computer programming experience. *Id*. at 39, 83-84. Although Mr. Dodda was to be Innova's employee for the entire period of employment, Innova intended to assign him to work with one of its clients, Change Healthcare Operations, LLC ("Change Healthcare"). Specifically, Mr. Dodda would provide consulting services on Change Healthcare's Patient Billing and Payment System ("PBPS"). According to Innova, PBPS allows healthcare providers to upload healthcare billing and payment information, processes digital documents that can be archived and queued for printing, and provides means for patients to pay for healthcare services online. *Id*. at 37-38, 76. As a Programmer Analyst, Mr. Dodda was to be involved in the design, implementation and

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[4] Following the hearing, the Director filed a supplemental brief to clarify certain remarks made by defense counsel during the hearing. Dkt. No. 73. The supplemental briefing was not made with leave of Court. In any event, for the reasons discussed below, the Court finds it unnecessary to consider the arguments made therein.

[5] "AR" refers to the certified administrative record submitted in this matter. Dkt. No. 64.

testing of PBPS, and in that process, he would use several programming languages, including C++, ASP, XML, SOAP, JavaScript, CSS, .NET and HTML. *Id*. at 37.

On April 3, 2017, Innova submitted the Petition, requesting an H-1B visa for Mr. Dodda as a nonimmigrant working in a "specialty occupation" pursuant to INA, 8 U.S.C. § 1101(a)(15)(H)(i)(b). *Id.* at 22-102. Innova's supporting documents included a letter from its Senior Vice President of Human Resources and Operations, as well as a letter from Change Healthcare, identifying Mr. Dodda's duties and responsibilities as a Programmer Analyst. Innova also submitted information about the company's profile, as well as documents concerning Mr. Dodda's education and work experience. *Id*. at 36-102.

On September 25, 2017, USCIS issued a Request for Evidence ("RFE"). In the RFE, USCIS observed: "From your description of the beneficiary's duties, it appears that the beneficiary will perform many of the duties of a Computer Programmer as listed in the *Occupational Outlook Handbook* ("OOH") (a publication of the U.S. Department of Labor)." *Id*. at 106. The agency went on to state that "[t]he OOH indicates that a Computer Programmer is an occupation that does not require a bachelor's level of education or higher or its equivalent in a specific specialty as a normal minimum for entry into the occupation." *Id*. Further noting that Innova's Labor Condition Application ("LCA") certified that the position in question was a "Wage Level I" entry position, USCIS concluded that Innova did "not show[] that the position offered to the beneficiary is a specialty occupation." *Id*. The agency gave Innova an opportunity to submit additional evidence, including an explanation of Mr. Dodda's duties and the percentage of time devoted to each duty, as well as "[a]n explanation of what differentiates your products and services from other employers in the same industry and why a bachelor's level of education in a specific field of study is a prerequisite for entry into the proffered position." *Id*. at 106-07. With respect to this latter category of information, Innova was instructed to "[b]e specific and provide documentation to support any explanation of complexity." *Id*. at 107.

In its RFE response, Innova described the duties of the proffered position as follows:

> Design [T]est [S]cript (20% — 8 hours per week)
>
> - Design test plans, scenarios, scripts or procedures.

- Develop testing programs that address areas such as database impacts, software scenarios, regression testing, negative testing, error or bug retests, or usability.
- Update automated test scripts to ensure correctness.
- Install and configure recreations of software production environments to allow testing of software performance.
- Design or develop automated testing tools.
- Visit beta testing sites to evaluate software performance.
- Evaluate or recommend software for testing or bug tracking.

Conduct System Testing (25% — 10 hours per week)

- Test system modifications to prepare for implementation.
- Plan test schedules or strategies in accordance with project scope or delivery dates.
- Document test procedures to ensure replicability and compliance with standards.
- Install, maintain or use software testing programs.
- Monitor program performance to ensure efficient and problem-free operations.
- Conduct historical analyses of test results.

Perform Code Review (35% — 14 hours per week)

- Document software defects, using a bug tracking system, and report defects to software developers.
- Identify, analyze, and document problems with program function, output, online screen or content.
- Monitor bug resolution efforts and track successes.
- Create or maintain databases of known test defects.
- Review software documentation to ensure technical accuracy, compliance, or completeness, or to mitigate risks.
- Conduct software compatibility tests with programs, hardware, operating systems, or network environments.
- Identify program deviance from standards, and suggest modifications to ensure compliance.
- Perform initial debugging procedures by reviewing configuration files, logs, or code pieces to determine breakdown source.

Coordinate and provide technical support to project team members (20% — 8 hours per week)

- Participate in product design reviews to provide input on functional requirements, product designs, schedules, or potential problems.
- Develop or specify standards, methods, or procedures to determine product quality or release readiness.
- Investigate customer problems referred by technical support.
- Provide feedback and recommendations to developers on software usability and functionality.
- Collaborate with field staff or customers to evaluate or diagnose problems and recommend possible solutions.
- Provide technical support during software installation or configuration.

*Id*. at 114-15. Additionally, in describing Mr. Dodda's anticipated duties, Innova stated that his

daily activities would include writing test scripts and performing code reviews to check for uniform coding standards and adherence to all aspects of the engineering process. If Mr. Dodda's testing and code review revealed bugs or other issues, he would bring them to his supervisor's attention. For any issues that could be fixed, Mr. Dodda would write the code himself. However, if the problem was intrinsic to the sequence of code and could not be corrected, then Mr. Dodda's supervisor would send the coding sequence back to the coding team. *Id*. at 114. In explaining why the position at issue required at least a bachelor's degree, Innova argued:

> [Mr. Dodda's] work as a Programmer Analyst requires at least a Bachelor's Degree in Electronics Engineering or related. Only someone with an education in this field is able to understand the detailed code involved in computer programming. To properly test any component of the PBPS Platform, a Programmer Analyst must understand the whole system, from back- to front-end. The ability to write scripts using a variety of testing tools and frameworks can only be acquired through the formalized schooling that Mr. Dodda has undertaken. In his work on the project, Mr. Dodda uses and must be familiar with the following: C++, ASP, XML, SOAP, JavaScript, CSS, .NET, and HTML.

*Id*. at 113.

In processing Innova's Petition, USCIS looked to the OOH and found that the Programmer Analyst position fell within the OOH's occupational classification for Computer Programmers. On December 8, 2017, USCIS denied the Petition, concluding that Innova failed to establish that the Programmer Analyst position is a "specialty occupation." AR 2-10. Innova contends that USCIS failed to properly consider the evidence and did not articulate any reasonable basis for its decision, and that the agency's decision therefore must be set aside as arbitrary, capricious, and an abuse of discretion.

## II. LEGAL STANDARD

The APA allows for judicial review of an agency action and provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .." 5 U.S.C. § 706(2)(A). While the reviewing court "must conduct a searching and careful inquiry into the facts," the standard of review "is a narrow one," and "a court is not empowered by section 706(2)(A) to substitute its judgment for that of the agency." *Nw. Motorcycle Ass'n v. U.S. Dep't*

*of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citing *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983)).

In reviewing an agency's decision, a court considers whether there was a clear error of judgment and whether the decision was based on relevant factors. *Nw. Motorcycle Ass'n*, 18 F.3d at 1471. "In order for an agency decision to be upheld under the arbitrary and capricious standard, a court must find that evidence before the agency provided a rational and ample basis for its decision." *Id*. All that is required is a rational connection between the facts found and the conclusions made by the agency. *Friends of Santa Clara River v. U.S. Army Corps of Engineers*, 887 F.3d 906, 920 (9th Cir. 2018). Accordingly, an agency's decision will not be vacated unless the agency relied on factors Congress did not intend for the agency to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that is counter to the evidence presented, or provided an explanation that is so implausible that it cannot be ascribed to a difference in viewpoints or as the product of the agency's expertise. *Id*. at 921.

Although courts routinely resolve APA challenges to an agency's administrative decision by summary judgment, courts do not follow the traditional analysis to determine whether a genuine issue of material fact exists, because "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*. The court's review is limited to the administrative record, to which both sides have stipulated. *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

**III. DISCUSSION**

The sole issue presented is whether USCIS erred in concluding that Innova's Programmer Analyst position is not a "specialty occupation." A "specialty occupation" is "an occupation that requires theoretical and practical application of a body of highly specialized knowledge, and attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1)(A), (B). The related regulation provides:



United States District Court
Northern District of California

> Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii).

Innova can establish that Mr. Dodda would perform a "specialty occupation" by showing that the Programmer Analyst position meets any one of the following four criteria:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or
>
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). Innova bears the burden of proving that the Programmer Analyst position meets one of these criteria. 8 U.S.C. § 1361.

**A. Criterion 1: A Baccalaureate or Higher Degree or its Equivalent**

Under the first regulatory criterion, Innova may establish that the Programmer Analyst position is a "specialty occupation" by showing that the position requires "'a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.'" *Innova Solutions, Inc. v. Baran*, 338 F. Supp. 3d 1009, 1017 (N.D. Cal. 2018) (quoting 8 U.S.C. § 1184(i)(1)(B)). With respect to this first criterion, the parties do not dispute that USCIS looks to the OOH as the authoritative source on the duties and educational requirements of a wide variety of occupations, and no one contests that the proffered position falls under the OOH's Computer Programmer classification. At issue is USCIS's determination that a bachelor's degree, or its equivalent, is not "normally" the minimum requirement for entry into the



United States District Court
Northern District of California

occupation.

According to USCIS's decision,[6] the OOH describes Computer Programmer duties, in part, as follows:

> Computer programmers write and test code that allows computer applications and software programs to function properly. They turn the program designs created by software developers and engineers into instructions that a computer can follow. In addition, programmers test newly created applications and programs to ensure that they produce the expected results. If they do not work correctly, computer programmers check the code for mistakes and fix them.
>
> Duties
>
> Computer programmers typically do the following:
>
> - Write programs in a variety of computer languages, such as C++ and Java
> - Update and expand existing programs
> - Test programs for errors and fix the faulty lines of computer code responsible
> - Create and test code in an integrated development environment (IDE)
> - Use code libraries, which are collections of independent lines of code, to simplify the writing
>
> Programmers work closely with software developers, and in some businesses their duties overlap. When such overlap occurs, programmers can do work that is typical of developers, such as designing the program. Program design entails planning the software initially, creating models and flowcharts detailing how the code is to be written, writing and debugging code, and designing an application or systems interface. Programmers often use an IDE, which allows them to create, edit, and test code.

*Id.* at 7-8. Additionally, the OOH describes the training and other qualifications for a Computer Programmer as follows:

> *Most* computer programmers have a bachelor's degree in computer science or a related subject; however, *some* employers hire workers with an associate's degree. Most programmers specialize in a few programming languages.

---

[6] At oral argument, Innova's counsel discussed certain printouts, reportedly from the OOH website, which are outside the record. The Court relies here upon the portions of the OOH, as quoted by USCIS, in the record. Innova does not dispute the accuracy of the portions of the OOH that have been quoted in the record.

> Education
>
> *Most* computer programmers have a bachelor's degree; however, *some* employers hire workers who have an associate's degree. Most programmers get a degree in computer science or a related subject. Programmers who work in specific fields, such as healthcare or accounting, may take classes in that field to supplement their degree in computer programming. In addition, employers value experience, which many students gain through internships.

AR 8 (quoting OOH, 2016-2017 Edition) (emphasis added).

In concluding that Innova's proffered position did not meet the first criterion, USCIS reasoned:

> As stated in the OOH, the occupation allows for a wide range of educational credentials, including an associate's degree to qualify. *While the OOH indicates that most computer programmers obtain a degree (either a bachelor's or an associate's degree) in computer science or a related field, the OOH does not state that at least a bachelor's degree or its equivalent in a specific specialty is normally the minimum required for entry into the occupation*. Further, the OOH also indicates that employers value computer programmers who have experience, which can be obtained through internships. Accordingly, the position [Innova] offered to the beneficiary does not meet this criterion.

*Id.* (emphasis added). The parties' dispute centers on the text highlighted in the above-quoted record excerpts.

Emphasizing that the OOH states that "most" Computer Programmers have a bachelor's degree, Innova contends that the OOH profile necessarily, and unequivocally, means that a bachelor's degree "normally" is required for entry to the occupation. In Innova's view, USCIS's decision contradicts the plain language of the OOH, renders the word "normally" meaningless, ignores that "normally" necessarily implies that there are exceptions, and distorts the OOH to mean that a bachelor's degree is "always" required.[7] The Director, on the other hand, says that Innova cannot simply rely on the OOH profile, which the Director says allows for both two-year and four-year degrees as a minimum entry requirement. The Director argues that the OOH merely

[7] Innova also argues that portions of USCIS's decisions concerning Mr. Gogumalla and Ms. Karunamayi, the other beneficiaries at issue in this litigation, establish that the agency simply recycles the same boilerplate response in processing H-1B petitions. The Court does not find it necessary or appropriate to consider those other decisions in resolving the present matter concerning Mr. Dodda.



United States District Court
Northern District of California

describes what most Computer Programmers "have" and not what that position normally "requires."

USCIS mischaracterizes the OOH to the extent the agency's decision suggests that the OOH indicates that "most" Computer Programmers have "either a bachelor's degree or an associate's degree . . .." *Id.* at 8. As discussed above, what the OOH actually says is that "[m]ost computer programmers have a bachelor's degree" and that "some employers hire workers with an associate's degree." *Id.* Nevertheless, the agency correctly observes that not all Computer Programmer positions are the same and, per the OOH, at least some Computer Programmer positions may be performed by someone with an associate's degree.

The parties have cited, and this Court has found, very few cases on point and none are binding upon this Court. Where a dispute centers on an OOH profile indicating that at least *some* positions do not require a bachelor's degree, courts have taken different views as to whether the OOH profile provides a rational basis for the agency to conclude that the petitioner failed to establish that a bachelor's degree normally is a minimum entry requirement. In *Ajit Healthcare, Inc. v. U.S. Dep't of Homeland Security*, cited by the Director, the district court found that the OOH itself provided a rational basis for USCIS's conclusion that a bachelor's degree was not normally required for a Medical and Health Services Manager position, where the OOH stated that bachelor's and master's degrees "are the most common educational pathways to work in this field," but also noted that "some facilities may hire those with on-the-job experience instead of formal education." No. CV 13-1133 GAF (JPRx), 2014 WL 11412671, at *4 (C.D. Cal., Feb. 7, 2014). The Director maintains that Innova had the burden to demonstrate that the particular Programmer Analyst position that Mr. Dodda was to fill required a bachelor's degree, as opposed to an associate's degree. *See Glara Fashion, Inc. v. Holder*, No. 11 Civ. 889 (PAE), 2012 WL 352309, at *8 (S.D.N.Y., Feb. 3, 2012) (finding that where the OOH provided that employers in fashion design seek individuals with either a 2-year or a 4-year degree, USCIS did not err in concluding that the plaintiff failed to meet its burden to show any differences between a position with a two-year degree and the duties to be performed at plaintiff's business).

Innova contends that the OOH description, standing alone, is sufficient proof, and argues



United States District Court
Northern District of California

that the Court should follow *Next Generation Technology, Inc. v. Johnson*, 328 F. Supp. 3d 252 (S.D.N.Y. 2017), which also concerned a position falling within the OOH's Computer Programmer classification. In *Next Generation*, the district court concluded that USCIS failed to articulate a rational basis for its decision that the position in question was not a "specialty occupation." Noting that the petitioner had submitted a document to USCIS indicating that 11 percent of programmer positions required only some college or no degree and six percent required only a high school diploma, the *Next Generation* court was "at a loss to see a 'rational connection' between the evidence indicating that '*most* computer programmers *have* a bachelor's degree' and USCIS's determination that 'computer programmers *are not normally required to have* a bachelor's degree.'" *Id*. at 267.

In *Liu v. Baran*, No. SACV 18-00376 JVS (KESx), 2018 WL 7348851 (C.D. Cal., Dec. 21, 2018), an event manager position was found to normally require at least a bachelor's degree.[8] The court reached that conclusion based on the OOH profile, which stated that "most" positions required a four-year degree, as well as USCIS's own decision in which the agency acknowledged that a baccalaureate level of training generally was required to be an event manager. *Id*. at *5.

Of these cases, *Next Generation* is the closest on point. Nevertheless, this Court is not entirely persuaded by the approach taken in that case, which is also distinguishable in at least two respects. Innova points out that in *Next Generation*, USCIS was faulted for failing to articulate why the employer's listed duties for the position were incompatible with a "specialty occupation." 328 F. Supp. 3d at 266. Innova contends that USCIS also failed to do so here in concluding that the first criterion was not met. As discussed above, however, the *Next Generation* court noted that the petitioner submitted to USCIS evidence indicating that only 11 percent of programmer positions required some college or no degree and six percent required only a high school diploma. Innova now requests that this Court consider statistics from the Department of Labor's Occupational Information Network, which Innova says demonstrate that the vast majority, i.e.,

---

[8] Ultimately, however, the court in *Liu* concluded that the petitioner did not meet the first regulatory criterion, finding that USCIS had a rational basis for its determination that the position did not require a degree in a specific specialty or its equivalent. 2018 WL 7348851 at *8.

88%, of programmers have a bachelor's degree. However, Innova cannot now properly rely on a version of those statistics that was updated in 2018, after USCIS issued the decision in question. *Next Generation* also does not help Innova insofar as that decision relied upon a rescinded USCIS memo stating that the agency generally considered computer programmer positions to qualify as "specialty occupations." 328 F. Supp. 3d at 266.[9]

Moreover, the Court is not persuaded that the issue presented properly is resolved by simply resorting to statistics and percentages. As discussed at oral argument, there are professions, such as surgeon, that indisputably require at least a bachelor's degree for entry into the occupation. In such situations, the OOH profile may go a long way toward establishing, or even definitively establish, that the first regulatory criterion is met. However, not all occupations fall within such clear and explicit groups; and, the regulation indicates that some showing must be made with respect to the "particular position" in question when the OOH does not describe the minimum educational requirements in a categorical fashion. *See* 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) ("A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position"). Here, the OOH description for the Computer Programmer occupation does not describe the normal minimum educational requirements of the occupation in a categorical fashion. Accordingly, the Court agrees with the Director that to meet the first criterion, Innova could not simply rely on the OOH profile, and instead had the burden to show that the particular position offered to Mr. Dodda was among the Computer Programmer positions for which a bachelor's degree was normally required. USCIS therefore provided a rational basis for its determination that Innova had not made the required showing and that the Programmer Analyst position does not meet the first regulatory criterion. For the reasons discussed below, the Court also concludes that the agency did not act arbitrarily or capriciously in concluding that Innova failed to present sufficient evidence to show that the Programmer Analyst position normally required a bachelor's degree.

---

[9] Innova has submitted a copy of the USCIS memo cited in *Next Generation*, and the Director has submitted a copy of the one that rescinded it. For purposes of resolving the parties' cross-motions for summary judgment, the Court finds it unnecessary to consider either memo, as there is no dispute that the memo referred to in *Next Generation* is no longer in effect.

United States District Court
Northern District of California

### B. Criterion 2: Bachelor's Degree Common to the Industry and the Complexity and Uniqueness of the Position

Under the second regulatory criterion, there are two ways in which Innova can establish that the Programmer Analyst position is a "specialty occupation": (1) by showing that "[t]he degree requirement is common to the industry in parallel positions among similar organizations" or, alternatively (2) by demonstrating that the position "is so complex or unique that it can be performed only by an individual with a degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(2).

#### 1. Bachelor's Degree Common to the Industry

Here, "USCIS typically considers whether the [OOH] reports on an industry-wide requirement, whether a professional association has made a degree a minimum entry requirement, and whether firms or individuals in the industry have attested that such firms 'routinely employ and recruit only degreed individuals.'" *Irish Help at Home LLC v. Melville*, No. 13-cv-00943-MEJ, 2015 WL 848977, at *7 (N.D. Cal., Feb. 24, 2015) (quoting *Shanti, Inc. v. Reno*, 36 F. Supp. 2d 1151, 1165 (D. Minn. 1999)). USCIS concluded that Innova did not present any evidence showing a common degree requirement in the industry in parallel positions among similar organizations, such as letters or affidavits from firms or individuals in the information technology industry attesting that such businesses routinely employ and recruit only degreed individuals. AR 9. Innova does not appear to challenge USCIS's decision on this point, either in its motion for summary judgment or in opposition to the Director's cross-motion for summary judgment. Accordingly, the Court finds no basis to conclude that USCIS's decision on this issue was arbitrary or capricious, or constituted an abuse of discretion.

#### 2. Complex and Unique Position

Under this clause of the second regulatory criterion, the Programmer Analyst position may qualify as a "specialty occupation" if Innova establishes that the position "is so complex or unique that it can be performed only by an individual with a degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(2). USCIS concluded that Innova failed to submit sufficient evidence "showing the unique or complex nature of the position, or how this position differs from other similar positions within the same industry . . .." AR 9. Although USCIS acknowledged Innova's list of the Programmer

Analyst responsibilities and the identification of the percentage of time to be spent on various duties, the agency concluded that the list was "generic in nature" and insufficiently detailed. *Id.* Citing its attorney's letter submitted in response to the agency's RFE, Innova argues that it provided a more detailed description of Mr. Dodda's duties and an explanation why those duties required a bachelor's degree. Dkt. No. 61 at 19-21; AR 112-115. Innova contends that its description of job duties is not generic and that USCIS erred by failing to explain why the identified duties are incompatible with a "specialty occupation."

In the letter submitted to USCIS by Innova's attorney, counsel described Mr. Dodda's anticipated daily duties and argued that "[h]is work as a Programmer Analyst requires at least a Bachelor's Degree in Electronics Engineering or related [subject]" for familiarity with various programming languages, as well as to understand the detailed code involved and to properly test components of PBPS. AR 113. In Innova's view, it should be self-evident from the OOH that the identified duties for the Programmer Analyst position require at least a bachelor's degree, and that USCIS therefore had the burden to explain why the identified job duties did not require a four-year degree. However, the OOH does not specify which Computer Programmer duties require a bachelor's degree and which duties may be performed by someone with an associate's degree. As discussed above, Innova bears the burden of proof, 8 U.S.C. § 1361, and "[c]ommensurate with that burden is responsibility for explaining the significance of proffered evidence." *Repaka v. Beers*, 993 F. Supp. 2d 1214, 1219 (S.D. Cal. 2014). Moreover, Innova's letter is simply attorney argument. While Innova suggested that it is common practice in these proceedings for attorneys to make representations on behalf of their clients, Innova has not provided a basis to conclude that attorney argument properly may be deemed an adequate substitute for actual evidence. *See, e.g.*, *Liu*, 2018 WL 7348851 at *1 (observing that the petitioner's submission in response to USCIS's RFE included an expert opinion letter).

The only other item containing an explanation as to why the Programmer Analyst position requires a bachelor's degree is the letter from Change Healthcare submitted with Innova's original petition to the agency. That letter described duties and stated, "[I]t is our understanding that the above-mentioned duties require at least a Bachelor's or Master's Degree in Computer



United States District Court
Northern District of California

Applications, Information Technology or a closely related field." *Id*. at 99. The Court is not persuaded that this letter is probative evidence that the Programmer Analyst position Mr. Dodda was to fill required a bachelor's degree. The Director notes that the letter incorrectly identifies the proffered position as "Senior Software Engineer" and does not coincide with the duties described in Innova's attorney's letter. For example, it is not apparent from Innova's listed duties that Mr. Dodda, who was proposed to be hired for a position classified as a "Wage Level I" entry position, would "[]ead[] and direct[] the work of others," as stated in Change Healthcare's letter. Even if most of the other listed duties in Change Healthcare's letter are credited as matching those identified by Innova, the Change Healthcare letter does not actually say that a four-year degree is required. Instead, the letter merely states Change Healthcare's "understanding" that the listed job duties require a bachelor's degree, without identifying the basis for that understanding.

While the Court disagrees with USCIS's characterization of Innova's list of duties of the position as "generic," USCIS did not act arbitrarily or capriciously and did not abuse its discretion in concluding that Innova failed to present sufficient evidence to discharge its burden of proof.

**C. Criterion 3: Position Normally Requires a Degree or its Equivalent**

The third criterion requires Innova to demonstrate that the Programmer Analyst position is a "specialty occupation" by showing that the company "normally requires a degree or its equivalent for the position." 8 C.F.R. § 214.2(h)(4)(iii)(A)(3). Here, Innova submitted educational and payroll documentation showing that several of its other Programmer Analysts have at least a bachelor's degree. AR 122-155. USCIS concluded that this evidence did not meet the third regulatory criterion, reasoning that "simply providing evidence of your workers' education does not show that you have ever required a specific degree prior to hiring of workers for the position." AR 9. The agency further noted that Innova "did not provide probative evidence of [its] requirements for the position such as job postings or internal position descriptions for the proffered position." *Id*. Innova does not appear to challenge USCIS's decision on this point, either in its motion for summary judgment or in opposition to the Director's cross-motion for summary judgment. Accordingly, the Court finds no basis to conclude that USCIS's decision on this issue was arbitrary or capricious, or constituted an abuse of discretion.

### D. Criterion 4: The Nature of the Specific Duties of the Position

The fourth regulatory criterion provides that the Programmer Analyst position may qualify as a "specialty occupation" if Innova demonstrates that "[t]he nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(4). In their respective briefing, the parties largely discuss this criterion together with the second clause of the second criterion. For the same reasons described above with respect to the second criterion, the Court finds that Innova has not shown that USCIS's denial of its petition was arbitrary and capricious or an abuse of discretion.

## IV. CONCLUSION

Based on the foregoing, the Court denies Innova's motion for summary judgment and grants the Director's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: August 8, 2019

Virginia K. DeMarchi

VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California