UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INNOVA SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DONNA P. CAMPAGNOLO,[1] <br><br> Defendant. | Case No. 17-cv-03674-VKD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART INNOVA SOLUTIONS INC.'S MOTION FOR FEES AND COSTS PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT, 28 U.S.C. § 2412** <br><br> Re: Dkt. No. 88 |

## I. BACKGROUND

In this action, Innova Solutions, Inc. ("Innova") challenged the United States Citizenship and Immigration Services' ("USCIS") decision denying Innova's I-129 Petition for Nonimmigrant Worker seeking an H-1B visa for its intended beneficiary, Dilip Dodda.[2] On August 8, 2019, this Court denied Innova's motion for summary judgment and granted USCIS's motion for summary judgment. Innova appealed, and the Ninth Circuit reversed. Having prevailed before the Ninth Circuit, Innova now moves this Court for an award of $148,625 in attorneys' fees and $1,580.34 in costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. USCIS opposes the motion. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants in part and denies in part Innova's motion for fees and

---

[1] Pursuant to Rule 25(d), Donna P. Campagnolo, the Director of U.S. Citizenship and Immigration Services' California Service Center, is substituted in place of Kathy A. Baran.

[2] Innova also challenged USCIS's decisions regarding two other beneficiaries. The Court adjudicated the parties' cross-motions for summary judgment with respect to Mr. Gogumalla. Dkt. Nos. 56, 82. Pursuant to the parties' stipulation, Innova's claims regarding Ms. Karunamayi were dismissed without prejudice. Dkt. Nos. 79, 81.

costs.[3]

## II. DISCUSSION

"'The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority.'" *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1166 (9th Cir. 2019) (quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991)). To accomplish that objective, the EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). As relevant here, the term "party" includes "any owner of an unincorporated business, or any partnership, corporation, association, . . . or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." *Id*. § 2412(d)(2)(B)(ii). Any fee application must be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement. *Id.* § 2412(d)(1)(B). Thus, eligibility for a fee award requires that (1) the party seeking fees is a "prevailing party"; (2) the party seeking fees meets the employee and net worth requirements; (3) the fee application is timely filed and properly supported; (4) the government's position was not "substantially justified"; and (5) no "special circumstances" make an award unjust. *See Ibrahim*, 912 F.3d at 1167 (citing *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)).

---

[3] All parties expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Review of the Ninth Circuit's docket indicates that the Ninth Circuit's formal mandate was entered on March 11, 2021. *See Innova Sols. v. Baran*, Case No. 19-16849, Dkt. No. 67. Both sides have confirmed that apart from resolving Innova's present motion for fees and costs, no further action is required by this Court with respect to Innova's H-1B petition filed on behalf of Mr. Dodda.

2

In the present case, the first, third, and fifth factors are not at issue. USCIS opposes the fee request on the grounds that (1) Innova has not shown, as a threshold matter, that it has fewer than 500 employees and that its net worth is less than $7 million; and (2) USCIS's position was substantially justified. USCIS also argues that even if Innova is entitled to an award, it has not demonstrated that this case warrants EAJA fees at enhanced rates, and its claimed fees are otherwise excessive.[4]

### A.   Whether Innova Is Eligible for a Fee Award

Under the EAJA's definition of "party," USCIS argues that Innova is not eligible for a fee award because it had more than 500 employees and its net worth exceeded $7,000,000 at the time the civil action was filed. *See* 28 U.S.C. § 2412(d)(2)(B)(ii). As the party seeking fees, Innova has the burden of establishing its eligibility for an award. *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991).

With its moving papers, Innova submitted the declaration of Umadevi Ramachandran, who states that she is Innova's "authorized representative" and attests that on June 27, 2017 when this action was filed, Innova "had approximately 144 employees and a net worth of $1,054,381." Dkt. No. 88-2. In its reply, Innova clarified that Ms. Ramachandran is its Senior Manager of Human Resources (*see* Dkt. No. 94 at 1; *see also* Dkt. No. 64-1 at 2, 13, 22, 28, 32, 29, 42, 44). Additionally, Innova submitted what its counsel represents to be Innova's 2017 federal tax return showing that in 2017 Innova had total assets of $19,227,095 and total liabilities of $18,172,714, leaving a net worth of $1,054,381. *See* Dkt. No. 94-1 at ECF 13. Although USCIS does not dispute that net worth is calculated by subtracting total liabilities from total assets (*see* Dkt. No. 92 at 10), it remains skeptical of Innova's stated net worth because Innova's documentation focuses on the company's domestic operations and does not account for Innova's foreign affiliates. Innova indisputably has foreign affiliates, including operations in India. However, Innova maintains that it is the sole party before this Court and that USCIS is improperly treating different Innova entities as a single entity for purposes of the EAJA. Innova's counsel submits what he

---

[4] USCIS has not stated an objection to any specific cost item sought by Innova.

3

represents to be articles of incorporation showing that Innova is a separate entity from Innova Pvt. Ltd. in India. *See* Dkt. Nos. 94-4, 94-5.

At oral argument, USCIS acknowledged that the EAJA is silent regarding whether "party" includes affiliates of the party to the action and informed the Court that there is no caselaw on point. While there was some informality in Innova's submission of its reply evidence, which was not supported by any declaration, those documents tend to corroborate Ms. Ramachandran's declaration regarding Innova's net worth at the time this action was filed. Absent authority or evidence from USCIS indicating that this Court properly could or should consider the financial condition of Innova's affiliates for purposes of evaluating whether Innova is eligible for a fee award, on the record presented the Court finds that Innova satisfies the requirements of a "party" under 24 U.S.C. § 2412(d)(2)(B)(ii).

### B.   Whether the Government's Position Was Substantially Justified

USCIS bears the burden of showing that its position was substantially justified on the law and the facts. *Ibrahim*, 912 F.3d at 1167. "Substantially justified does not mean 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person.'" *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Put another way, substantially justified means there is a dispute over which 'reasonable minds could differ.'" *Id*. (quoting *League of Women Voters of Cal. v. FCC*, 798 F.2d 1255, 1260 (9th Cir. 1986)); *see also Ibrahim*, 912 F.3d at 1167 ("To establish substantial justification, the government need not establish that it was correct or 'justified to a high degree'—indeed, since the movant is established as a prevailing party it could never do so—but only that its position is one that 'a reasonable person could think it correct, that is, [that the position] has a reasonable basis in law and fact.'") (quoting *Pierce*, 487 U.S. at 565, 566 n.2)).

"When evaluating the government's 'position' under the EAJA," courts "consider both the government's litigation position and the 'action or failure to act by the agency upon which the civil action is based.'" *Ibrahim,* 912 F.3d at 1168 (quoting 28 U.S.C. § 2412(d)(1)(B)). "Thus, the substantial justification test is comprised of two inquiries, one directed toward the government

4

agency's conduct, and the other toward the government's attorneys' conduct during litigation." *Id.* In determining whether the government's position was substantially justified, courts should not take a piecemeal approach, but should instead consider the totality of the circumstances and examine the record as a whole and make a single finding. *Id.* at 1153.

In the present action, the parties disputed whether Innova established that Mr. Dodda would perform a "specialty occupation" under any one of the four criteria under 8 C.F.R. § 214.2(h)(4)(iii)(A). With respect to the first criterion, the parties disagreed over the interpretation of the "computer programmer" description in the Occupational Outlook Handbook ("OOH")—namely, whether language that "most" computer programmers have a bachelor's degree means that a bachelor's degree "normally" is required for such work. *See* Dkt. Nos. 61, 62.[5] USCIS argues that its decision and litigation position were substantially justified because the issue presented on the first criterion was one on which reasonable minds could differ. Here, the government points to the absence of any circuit authority and the very few district court decisions (reaching different conclusions) available at the time this matter was litigated before this Court. Additionally, USCIS argues that substantial justification for its position is evidenced by this Court's order granting summary judgment in the agency's favor. Innova maintains that neither the agency's decision nor the government's litigation position could be substantially justified in view of the Ninth Circuit's conclusion that USCIS's decision was arbitrary and capricious.

Objective indicia, including the novelty of the issue involved and the view of other courts on the merits, may be relevant, although not necessarily dispositive on the issue of substantial justification. *Gonzales*, 408 F.3d at 618 (citing *Pierce*, 487 U.S. at 568). Additionally, the fact that a government agency did not prevail on its position is not dispositive of the question whether it was substantially justified. *See, e.g.*, *Pierce*, 487 U.S. at 569 ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."); *Gonzales*, 408 F.3d at 620 ("As the district court

---

[5] The parties also disputed whether Innova met its burden to establish any of the three remaining criteria under 8 C.F.R. § 214.2(h)(4)(iii)(A). Only the first criterion was at issue on appeal before the Ninth Circuit. *See Innova Sols., Inc. v. Baran*, 983 F.3d 428, 430 n.2 (9th Cir. 2020).

correctly recited the law, that the government lost 'does not raise a presumption that its position was not substantially justified.'") (quoting *Kali v. Bowen*, 854 F.2d 329, 334 (9th Cir. 1988)). Generally, courts should not rely on hindsight in assessing whether the government's position was substantially justified. *See Gonzales*, 408 F.3d at 620 ("By putting undue weight on the Supreme Court's holding on the merits, the district court seemed to rely on hindsight, rather than an assessment of the reasonableness of the government's position *at the time of the litigation*."). Nevertheless, where the Ninth Circuit finds that an agency's decision was not supported by substantial evidence, that is "a 'strong indication' that the 'position of the United States' in this matter was not substantially justified." *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005). "Indeed, it will be only a 'decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record.'" *Id*. (quoting *Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1085 (9th Cir. 2002)).

In the present action, the Ninth Circuit found that USCIS's position with respect to the OOH was arbitrary and capricious, thus providing a "strong indication" that the government's position, both at the agency level and in the litigation, was not a matter on which reasonable minds could differ. *Thangaraja*, 428 F.3d at 874. Indeed, the Ninth Circuit found that USCIS's "reasoning is beyond saving," stating that "[t]here is no 'rational connection' between the only source USCIS cited, which indicated most computer programmers have a bachelor's degree and that a bachelor's degree is typically needed, and USCIS's decision that a bachelor's degree is not normally required." *Innova Sols., Inc. v. Baran*, 983 F.3d 428, 432 (9th Cir. 2020). Regardless of this Court's view of the merits, a conclusion that USCIS's position was substantially justified is foreclosed by the Ninth Circuit's explicit findings.

Moreover, unlike *Gonzales*, where the district court placed "undue" weight on a subsequent Supreme Court decision (following disagreement among the district court, several circuit courts and within the Ninth Circuit panel), there is no such record before this Court in this matter. Although there were varying decisions among a few district courts at the time this matter was litigated before this Court, that appears to be a function of the fact that the relevant USCIS

6

1   policy had been in effect for only about two years before the matter was adjudicated by this Court.

2   USCIS has not shown that the present action is the "decidedly unusual case" in which there is

3   substantial justification for its position, notwithstanding reversal of the agency's decision.

4   *Thangaraja*, 428 F.3d at 874. Accordingly, USCIS has not demonstrated that its position was

5   substantially justified.

### C. Amount of Fee Award

Innova seeks $148,625 in attorneys' fees and $1,580.34 in costs, which includes work performed by three attorneys at a rate of $450 per hour (with attorney travel time billed at $200 per hour) and the work of a paralegal at $100 per hour. *See* Dkt. No. 88-1. USCIS does not oppose a cost-of-living adjustment to the EAJA statutory rate,[6] but nonetheless argues that an enhanced rate is not warranted and that Innova's claimed fees are excessive.

#### 1. Requested Enhanced Hourly Rate

The EAJA provides that the amount of fees awarded "shall be based upon prevailing market rates for the kind and quality of the services furnished"; however, fees shall not be awarded at a rate of more than $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). In the Ninth Circuit, three requirements must be satisfied before a court may award fees above the statutory maximum: (1) "the attorney must possess distinctive knowledge and skills developed through a practice specialty"; (2) "those distinctive skills must be needed in the litigation"; and (3) "those skills must not be available elsewhere at the statutory rate." *Love*, 924 F.2d at 1496.

#### a. Distinctive Knowledge and Skills

Innova has demonstrated that its counsel David Sturman and David Wulkan possess specialized skills in the field of immigration law. Mr. D. Sturman avers that he has practiced

---

[6] USCIS calculated fees at the statutory rate, with a cost-of-living adjustment, based on the annually adjusted rates in the Ninth Circuit's schedule. *See* https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/. Putting aside that Innova contends that fees should be awarded at an enhanced rate, at the motion hearing Innova confirmed that it does not dispute the accuracy of USCIS's calculations based on the Ninth Circuit's schedule.

immigration law exclusively for over forty years, with twenty-five years of experience in federal district and circuit courts, as well as strong familiarity with the H-1B adjudication process and statutory and regulatory scheme. Dkt. No. 88-3. Additionally, he notes that he has been an active member of the Los Angeles County Bar Immigration Section and the American Immigration Lawyer Association. *Id*. Mr. Wulkan, who is also a member of the American Immigration Lawyer Association, states that he has practiced immigration law exclusively for seven years, with experience preparing approximately 1,000 H-1B petitions and familiarity with the statutory, regulatory and policy requirements for such petitions. Dkt. No. 88-4.

Innova has not demonstrated that attorney Jonathan Sturman has distinctive knowledge and skills developed through a practice specialty. Mr. J. Sturman's declaration is vague regarding his skills and experience. *See* Dkt. No. 88-5. He does not say how long he has been practicing law generally or immigration law specifically; however, California bar records and this Court's admission records indicate that he obtained his California law license in December 2016 (approximately six months before the present action was filed) and became a member of the bar of this Court a year later in December 2017 (approximately six months after the action was filed). Therefore, he had been licensed to practice law for only about two years at the time of the summary judgment hearing in Mr. Dodda's case. Mr. J. Sturman states that he has been practicing exclusively in the immigration field, "focus[ing] on federal litigation involving complex immigration matters, and regularly responding to lengthy requests for additional evidence from USCIS." *Id*. He points to two other H-1B cases that appear to have been litigated at approximately the same time as the present matter. In one of those cases, he is identified as co-counsel with David Sturman and Mr. Wulkan; in the other, he served as co-counsel with David Sturman. *See* Dkt. No. 88-5 (citing *Eva Care Grp., LLC v. Baran*, No. CV 17-4250-DMG (JPRx), 2018 WL 6071008 (C.D. Cal. May 23, 2018) and *Innova Sols., Inc. v. Baran*, No. 18-cv-09732 DDP (RAOx), 2019 WL 5748215 (C.D. Cal. Nov. 5, 2019)). Nevertheless, the nature and extent of Mr. J. Sturman's involvement in those other matters and the degree of experience he may have gained is unclear. Finally, Innova also relies on the declaration of another practitioner, Lea Nehme, who attests that based on her professional relationship with Mr. J. Sturman over the past

few years, she believes that he has "a deep understanding and expertise in both employment-based immigration and federal litigation." Dkt. No. 88-7.

The statutory exception for enhanced rates "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce*, 487 U.S. at 572. Moreover, all attorneys are expected "to be experts of their own cases and their clients' litigation goals." *Natural Resources Defense Council, Inc. v. Winter*, 543 F.3d 1152, 1159 (9th Cir. 2008) (concluding that junior attorneys did not have sufficiently distinctive skills in environmental law merely by participating in a companion case before the same court, involving similar legal and factual issues, on behalf of nearly identical client and against the same agency, but that other junior attorneys with publications, public speaking and outside research and committee work did have sufficiently distinctive skills in environmental law). On this record, the Court is unable to find that Jonathan Sturman has distinctive skills developed through a practice specialty necessary for an award of EAJA fees at an enhanced rate. His work therefore will be compensated at the EAJA statutory rate, with a cost-of-living adjustment. *See Thangaraja*, 428 F.3d at 876-77 ("Appropriate cost-of-living increases are calculated by multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers ('CPI-U') for the years in which counsel's work was performed[.]") (citing *Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir. 2001)). Fees for Mr. J. Sturman's travel time will be awarded at the requested rate of $200/hour, which is below the EAJA statutory rate for the relevant periods in question.

The remainder of the discussion will focus on the work of Messrs. Wulkan and David Sturman.

### b.    Necessary for the Litigation

For purposes of awarding fees at an enhanced rate, it is not sufficient for counsel to have specialized skill. Innova must show how its attorneys' specialized skill or knowledge was necessary for the work performed in this action. Although the Ninth Circuit has observed that "a specialty in immigration law could be a special factor warranting an enhancement of the statutory

rate," *Rueda-Menicucci v. I.N.S.*, 132 F.3d 493, 496 (9th Cir. 1997), it has declined to adopt a "per se rule that the practice of immigration law should be classified as a specialty similar to practicing patent law." *Thangaraja*, 428 F.3d at 876 (internal quotations omitted). Thus, "immigration law expertise, by itself," does not justify an award based on enhanced hourly rates, "without a showing that the attorneys possess distinctive knowledge or specialized skill necessary to this litigation[.]" *Nadarajah v. Holder*, 569 F.3d 906, 913 (9th Cir. 2009). "Where such qualifications are necessary and can be obtained only at rates in excess of the [statutory] cap, reimbursement above that limit is allowed." *Pierce*, 487 U.S. at 572.

Innova argues that a fee award based on an enhanced hourly rate of $450 is justified, claiming that there is limited availability of qualified attorneys with the requisite skills and experience to litigate the present action. The respective declarations of Messrs. D. Sturman and Wulkan are somewhat conclusory. Mr. D. Sturman testifies to his belief that there is a shortage of qualified and available attorneys with federal litigation experience and knowledge of the H-1B adjudications process "in the Los Angeles area," stating that most practitioners focus on administrative proceedings. Dkt. No. 88-3. Mr. Wulkan states that based on discussions with other attorneys in the American Immigration Lawyers Association, "there is a shortage of qualified attorneys who can litigate employment-based immigration cases." Dkt. No. 88-4. Nevertheless, Innova also submits the declarations of two other practitioners who attest that the present matter required employment-based immigration expertise, as well as strong familiarity with the underlying administrative process and federal court practice. Dkt. Nos. 88-6, 88-7. Both practitioners also aver that even on a nationwide level, immigration law attorneys with such knowledge and experience are rare. Dkt. Nos. 88-6, 88-7. USCIS has presented no evidence to the contrary.

Additionally, at the hearing on the present motion, Innova's counsel argued that this action was complex and required thorough knowledge of the H-1B administrative process, as well as knowledge of USCIS's interpretation of its regulations and how that interpretation changed over time. Here, Innova points in particular to the March 31, 2017 USCIS memorandum PM-602-0142, submitted by USCIS with its underlying summary judgment motion, in which the agency

10

1  rescinded its prior guidance on H-1B computer-related positions (*see* Dkt. No. 62-1)—a position
2  that Innova notes the agency has since reversed in light of the Ninth Circuit's decision in this
3  action.
4  While USCIS does not deny that Innova's counsel secured a significant result in this
5  matter, it argues that the record does not demonstrate that the issues presented required the kind of
6  "distinctive knowledge" or "specialized skill" contemplated by *Pierce*, or "'knowledge of . . .
7  particular, esoteric nooks and crannies of immigration law . . . needed to give the alien a fair shot
8  at prevailing,'" *Thangaraja*, 428 F.3d at 876 (quoting *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th
9  Cir. 2004)).
10 Ultimately, the matter turned on USCIS's interpretation of the OOH and the agency's own
11 regulations, which the Ninth Circuit found to be unambiguous and capable of resolution based on
12 a "common sense reading" of the regulatory language. *See Innova Sols., Inc.*, 983 F.3d at 433 &
13 n.9. As noted above, however, this litigation concerned a relatively recent change in the agency's
14 policy regarding H-1B petitions and interpretation of the OOH, and the issues therefore required
15 something more than straightforward application of substantial evidence and H-1B standards.
16 Accordingly, Innova has demonstrated that Messrs. Wulkan and David Sturman have distinctive
17 knowledge and skills that were necessary to this litigation.

### 2. Hours

19 Although Innova has established entitlement to an enhanced rate for the work of Messrs.
20 Wulkan and David Sturman, it "must also show that the requested enhanced rates are 'in line with
21 those [rates] prevailing in the community for similar services by lawyers of reasonably
22 comparable skill, experience and reputation.'" *Nadarajah*, 569 F.3d at 916 (quoting *Blum v.
23 Stenson*, 465 U.S. 886, 895 & n.11 (1984)). "Generally, the relevant community is the forum in
24 which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).
25 Whether calculating attorney's fees under California or federal law, courts follow the
26 lodestar approach. "The most useful starting point for determining the amount of a reasonable fee
27 is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly
28 rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Tex. State*

*Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.*

Innova "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended[.]" *Hensley*, 461 U.S. at 437. USCIS has "a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1993). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id.* at 433-34; *see also Chalmers*, 796 F.2d at 1210 ("Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary.").

Although Innova has submitted attorney declarations attesting to the reasonableness of the requested $450 enhanced hourly rate in the Los Angeles area and on a purported "national basis," Innova has not offered any evidence of the rate prevailing in the Northern District of California (the relevant forum) for attorneys of reasonably comparable skill, experience and reputation. *See* Dkt. Nos. 88-3, 88-4, 88-6, 88-7. Nevertheless, in the Ninth Circuit's 2009 decision in *Nadarajah*, enhanced rates of $500/hour and $335/hour for attorneys with approximately 15 and 10 years of experience, respectively, were noted to be below prevailing rates in the San Francisco Bay Area at that time. *See Nadarajah*, 569 F.3d at 917-18. Additionally, *Nadarajah* indicates that an hourly rate of $100 for Innova's paralegal is reasonable. *See id.* at 918. More recently, a court in this district approved hourly rates of $590, $600 and $625 for attorneys with extensive experience in a complex and time-sensitive juvenile asylum matter involving the intersection of Special Immigrant Juvenile Status, constitutional law and federal jurisdiction statutes. *See Primero Garcia v. Barr*, 484 F. Supp. 3d 750, 756 (N.D. Cal. 2020). Notwithstanding the lack of forum-based evidence from Innova, the Court finds that the requested enhanced $450 hourly rate generally is in line with those prevailing in this district for attorneys of reasonably comparable

skill and experience.

USCIS contends that Innova's claimed hours are excessive, arguing that counsel's work on Innova's summary judgment briefing was duplicative. Additionally, USCIS argues that time spent by a paralegal formatting and filing briefs and preparing tables of contents and authorities should not be compensated, as those are purely clerical tasks.

Having reviewed the record, the Court finds that the hours spent by the attorneys in this matter generally are reasonable. However, there are multiple entries in the submitted time sheets that include block billing, not as to the task performed, but with respect to the attorneys performing a single identified task. For example, in an entry for December 4, 2018, the time sheets reflect that all three attorneys together spent a total of 2.25 hours "discuss[ing] strategy re opposition/reply brief." Dkt. No. 88-1 at 3. Because all three attorneys are grouped together in this single entry, the Court infers that the total time in question is 2.25 hours and not 2.25 hours per attorney. As there is no clear indication of the actual time each attorney may have spent on the identified activity, the Court concludes that the fairest way to apportion the claimed time is to divide the total hours evenly among the identified attorneys for each task and apply the applicable rate to the apportioned time. The Court will otherwise award fees for the claimed hours without reduction.

As for the claimed 12.75 hours of work performed by paralegal Jaye O'Brien, purely clerical tasks generally are not recoverable in a motion for attorneys' fees and should instead be subsumed in normal overhead costs. *See Nadarajah*, 569 F.3d at 921 ("Apparently, the government contends that the filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates. This contention has merit."). Based on Innova's submitted time sheets, the Court agrees that many of the described tasks appear to be more clerical than legal in nature, with many entries noting that the paralegal "formatted and filed" various documents. *See* Dkt. No. 88-1. Innova claims that these paralegal hours were "billed at a significantly reduced rate" and are not clerical because the time entries "represent the time for checking the cites and preparing the indexes, table of cases and law." Dkt. No. 94 at 14. Tasks such as cite-checking are considered legal, rather than clerical in


nature. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (noting that work that is legal (not clerical) and capable of being performed by a paralegal includes "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence."). However, Innova's representations as to the nature of the billed paralegal tasks are not entirely accurate. For example, Innova claims 0.25 hours spent on October 18, 2018 "[f]ormat[ing] and fil[ing] Joint Status Report," which correlates to a status report (Dkt. No. 58) with one page of substantive text (omitting the case caption, signature blocks and certificate of service) and contains no indices, table of cases, or legal citations whatsoever. Additionally, the Court agrees that the challenged September 19, 2019 time entry for 0.25 hours for "[c]onvert[ing] Notice of Appeal & Exhibits to PDF and Fil[ing] on ECF" is purely clerical and should be deducted from Innova's total award. The Court therefore deducts a total of 0.5 hours of paralegal time as clerical in nature. Innova will be awarded a total of $1,225 for the paralegal's work.

In sum, the Court awards fees at an enhanced rate of $450/hour for the work of Messrs. David Sturman and Wulkan; at EAJA statutory fees (with a cost-of-living adjustment) for the work of Mr. Jonathan Sturman, plus Jonathan Sturman's travel time at $200/hour; and $100/hour for the paralegal's work as follows:

| Attorney/Paralegal | Rate | Hours | Total |
|---|---|---|---|
| David Sturman | $450 | 24.58 | $11,061.00 |
| David Wulkan | $450 | 67.58 | $30,411.00 |
| Jonathan Sturman | 2017 ($196.79) | 4.50 | $885.56 |
|  | 2018 ($201.60) | 87.50 | $17,640 |
|  | 2019 ($205.25) | 48.08 | $9,868.42 |
|  | 2020 ($207.78) | 80.50 | $16,726.29 |
|  | 2021 ($213.74) | 10.25 | $2,190.84 |
|  | Travel Time ($200) | 10 | $2,000 |
| Jaye O'Brien | $100 | 12.25 | $1,225 |

| Attorney/Paralegal | Rate | Hours | Total |
|---|---|---|---|
| | | Total Fees | $92,008.11 |

As noted above, the government has not stated any objection to Innova's itemized statement of costs (Dkt. No. 88-1 at ECF 7), which the Court has reviewed and finds reasonable.

### III. CONCLUSION

Based on the foregoing, Innova's motion for EAJA fees and costs is granted in part and denied in part as follows: Innova is awarded $92,008.11 in fees and $1,580.34 in costs for a total award of $93,588.45.

**IT IS SO ORDERED.**

Dated: December 13, 2021



VIRGINIA K. DEMARCHI
United States Magistrate Judge